**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
At Greenbelt

| | |
|---|---|
| **GEORGETOWN PAPER STOCK OF** ) <br> **ROCKVILLE, INC.** ) <br> **(A Maryland Corporation)** ) <br> **14820 Southlawn Lane** ) <br> **Rockville, MD 20880** ) <br> ) <br>            **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **INTERNATIONAL BALER CORP.** ) <br> **(A Delaware Corporation)** ) <br> **Serve:  William Nielsen, Registered Agent** ) <br> **5400 Rio Grande Avenue** ) <br> **Jacksonville, FL 32254** ) <br> ) <br> **and** ) <br> ) <br> **B E EQUIPMENT, INC.** ) <br> **(A Pennsylvania Corporation)** ) <br> **Serve: Nancy Ginsberg, Registered Agent** ) <br> **8 Morrisway Road** ) <br> **Owings Mills, MD 21117** ) <br> ) <br>            **Defendants** ) | Civil Action No. _____ |

**COMPLAINT**

The Plaintiff, Georgetown Paper Stock of Rockville, Inc., by counsel, sues the Defendants, International Baler Corporation and B E Equipment, Inc., and for causes of action states as follows:

**Jurisdiction and Venue**

1. Subject matter jurisdiction hereof is founded upon 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy is in excess of $75,000.

2. Personal Jurisdiction over the Defendants is pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1) and (2).

3. Venue is properly before this Court in that this action could have been brought in Montgomery County, Maryland pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-202(11).

**Parties**

4. Plaintiff, Georgetown Paper Stock of Rockville, Inc. ("GPS" or "Plaintiff") is a corporation organized under the laws of the State of Maryland with its principal place of business located in Rockville, Montgomery County, Maryland.

5. Defendant, International Baler Corporation ("IBC") is a corporation organized under the laws of the State of Delaware with its principal place of business located in Jacksonville, Florida.

6. Defendant, B E Equipment, Inc. ("BE") is a corporation organized under the laws of the State of Pennsylvania with its principal place of business located in Quakertown, Pennsylvania.

**Facts**

7. IBC is engaged in the business of design, manufacture and sale of commercial and industrial recycling equipment.

8. BE sells and services recycling equipment, waste reduction equipment, and solid waste handling equipment, including equipment manufactured by IBC.

9. GPS is a provider of recycling and waste management services, recycling a broad array of materials ranging from papers to plastics to metals.

10. IBC sells its recycling equipment both directly to certain customers and through various dealers.

11. BE is a dealer of IBC manufactured equipment.

12. In 2011, GPS began searching for the appropriate equipment to utilize at a new plant it was opening in Baltimore, Maryland.

13. After discussions with BE, which was acting as a dealer for IBC, on or about November 30, 2011, BE offered to sell GPS a baler manufactured by IBC, Model EXP-10144-T100-HP Automatic, Horizontal, Wide Mouth, Opened End, Expansion Side, Auto-Tie Baler (hereinafter the "Baler") for a net price of $379,164.00, after a trade in allowance of $30,000, for installation in the GPS facility in Baltimore, Maryland.

14. On or about December 16, 2011, GPS accepted BE's offer to sell the Baler. A copy of the contract dated December 16, 2011 (hereinafter the "Contract") is attached hereto as Exhibit "A" (hereinafter "Ex. A").

15. As part of the Contract, BE warrantied that it would give GPS a *complete refund* of the purchase price should the Baler not be able to meet the specified production level of up to 30 tons per hour for OCC[1] (Infeed Density 2.5# per Cubic Foot) and up to 33 tons per hour for News (Infeed Density 3# per Cubic Foot) (hereinafter collectively referred to as the "Production Capacity"). Ex. A at 5 ("Based on your request for processing 30 Tons per Hour of Cardboard, we will Offer a 100% Money Back Guarantee" if the Baler "Does Not Meet the Production Level Specifications"); *accord* Ex. A at 1.

---

[1] OCC is the acronym for old corrugated cardboard.

16. During negotiations leading up to the Contract, GPS repeatedly notified BE of the Production Capacity GPS required from the Baler to meet its business needs and, as evidenced by the Contract, BE understood and agreed to GPS' Production Capacity requirements.

17. Further, as part of the Contract, IBC offered a limited warranty (hereinafter the "Limited Warranty") that the Baler would "be free from defects in material and workmanship under normal operating conditions of use and service for a period of one (1) year or two thousand (2000) hours." Ex. A at 7.

18. Under that Limited Warranty, IBC offered to repair or replace the Baler as necessary. Ex. A at 7 ¶ 7.

19. The Baler was delivered by IBC to GPS in its Baltimore, Maryland facility.

20. Soon after its delivery, it was apparent that the Baler could not bale at the agreed-upon Production Capacity, and that it was defective in that it could not operate reliably even at a modest level of little more than 25% of the Production Capacity.

21. After timely notification to both IBC and BE that the Baler was not producing at or near the Production Level and that it was regularly breaking down, both IBC and BE acknowledged the issues and deficiencies, and made several attempts to remedy the defects in the Baler.

22. Because the Baler did not conform to the promises and warranties in the Contract, GPS withheld its final payment of $40,916.40 toward the total purchase price pending repair or replacement of the Baler.  IBC and BE never raised any objection to GPS withholding this final payment in light of the substantial defects and nonconforming nature of the Baler and IBC and BE's continued efforts to remedy those issues.

23.     IBC and BE made numerous attempts to repair the Baler so that it would conform to the Contract and cease breaking down to no avail.  During the summer of 2012, GPS had discussions with BE and IBC about replacing the Baler under the IBC Limited Warranty. However, the Defendants would only offer to replace the Baler with an auto-tie baler, which had a production capacity of approximately 20 tons per hour (approximately one-half of the agreed upon Production Capacity) and would not offer the same or similar warranty for that baler as they did for the Baler.

24.     GPS refused the offer of an inferior baler without the same warranty.

25.     After IBE and BE's multiple attempts to repair the Baler proved futile, and after IBC was unable to provide an adequate replacement for the Baler or otherwise provide a conforming product, GPS requested that IBC remove the Baler and refund GPS' purchase price.

26.     From the time of delivery of the Baler through the multiple attempts to repair the Baler, GPS was unable to bale cardboard and paper products at the Production Capacity promised by IBC and BE, causing GPS to incur additional labor and overhead to perform work that would have otherwise taken about one-third of the time and expense had the Baler performed as warranted and in conformity with the Contract.

## COUNT I
### (Breach of Warranties/International Baler Corporation)

27.     Paragraphs 1 through 26 of the Complaint are incorporated herein by reference as if repeated verbatim.

28.     IBC did not repair or replace the Baler pursuant to the terms of its Limited Warranty.

29.     As the direct and proximate result of IBC's failure to perform under the terms of the Limited Warranty, GPS has been damaged in the sum of $338,247.60.

30.     Despite demand, IBC fails and refuses to perform its obligations under the Limited Warranty.

WHEREFORE, Georgetown Paper Stock of Rockville, Inc. demands judgment against International Baler Corporation in the sum of $338,247.60, plus interest and costs of this action.

## COUNT II
### (Breach of Contract/BE Equipment, Inc.)

31.     Paragraphs 1 through 30 of the Complaint are incorporated herein by reference as if repeated verbatim.

32.     BE did not refund the purchase price pursuant to the terms of the Contract.

33.     GPS has been damaged by BE's failure to provide a baler that conformed to the Production Level in the Contract due to the fact that GPS had sufficient quantity of materials to use the Baler at that Level.

34.     As a result of the non-conformity of the Baler, GPS has been damaged in the sum of $338,247.60 for its failure to provide a refund.

35.     As the direct and proximate result of BE's failure to perform under the terms of the Limited Warranty, GPS has been damaged in the sum of $4,500,000.00, representing additional costs and losses that incurred for, *inter alia*, (i) repairs at GPS' expense; (ii) additional salaries, expenses and overhead due to down time from the broken Baler; (iii) transportation and other costs associated with the need to move materials to and operate from another location because of Baler breakdowns and insufficient baling capacity; (iv) the need to operate the Baler for extended periods above and beyond the amount of time it would have operated had it been able to perform as promised by BE under the terms of the Contract; and (v) lost business.

36.     Despite demand, BE continues to fail to perform its obligations under the Contract.

WHEREFORE, Georgetown Paper Stock of Rockville, Inc. demands judgment against B E Equipment, Inc. in the sum of $4,838,247.60, plus interest and costs of this action.

Respectfully submitted,

 /s/ Patrick J. Kearney
Patrick J. Kearney, Esquire, #01913
Selzer Gurvitch Rabin Wertheimer Polott & Obecny, P.C.
4416 East West Highway, Fourth Floor
Bethesda, Maryland 20814
Email:  pkearney@sgrwlaw.com
Telephone:  301-986-9600

**DEMAND FOR JURY TRIAL**

Georgetown Paper Stock of Rockville, Inc. demands a jury on all issues so triable.

 */s/  Patrick J. Kearney*
Patrick J. Kearney